UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN ABRAMS,

                    Petitioner,                    Case No. 1:14-cv-11890
                                                              Hon. Thomas L. Ludington

v.

DEWAYNE BURTON,

                    Respondent.
_____/

## ORDER DENYING PETITIONER ABRAM'S PETITION FOR HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Steven Abrams, is serving a controlling sentence of 52-to-102 years' imprisonment as well as a lesser term for his Wayne Circuit Court jury trial convictions of second-degree murder, MCL § 750.317; felon in possession of a firearm, MCL § 750.224f, and possession of a firearm during the commission of a felony, MCL § 750.224b. Abrams now seeks habeas review of his State conviction.

In his petition, Petitioner Abrams raises the following eight claims: (1) the prosecutor committed misconduct at trial, (2) Petitioner was denied the effective assistance of counsel, (3) Petitioner was denied his right to be present at trial when a DVD of his police interrogation was played for the jury outside his presence, (4) the prosecutor committed additional acts of misconduct, (5) Petitioner was improperly bound over for trial on the charge of first-degree murder, (6) Petitioner was not called into court for the completion of a competency hearing, (7) Petitioner was denied the effective assistance of counsel for failing to ensure his presence at the competency hearing, and (8) the trial court erroneously commented on the evidence presented at

trial to the jury.  Because all of Petitioner's claims are without merit or barred by his state court procedural default, his petition will be denied. A certificate of appealability and permission to proceed on appeal in forma pauperis will also be denied.

## I.

This case involves a fatal shooting occurring next to residential apartments located between I-75 and the Detroit Medical Center in the city of Detroit.  The relevant facts were outlined by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In this case, the eyewitness, Felicia McCalvin, testified that she saw defendant with the victim below the balcony of her residence moments before the shooting, and defendant and the victim were the only two people in the vicinity. McCalvin heard gunshots, saw defendant running, and saw the victim lying on the ground. Thereafter, she positively identified defendant in a photographic lineup, and a police officer confiscated clothes from defendant that matched McCalvin's description. Defendant's statement to the police was inconsistent with McCalvin's testimony. Defendant told the police that the victim was shot during a drive-by shooting that occurred near a liquor store that was not close to McCalvin's residence. In addition, the victim's father, Milton Allen, testified that, hours before the shooting, defendant said that he would kill either the victim or Allen before the night was over. Moreover, Karen Rouse, the victim's girlfriend, testified that defendant was behaving aggressively toward the victim and had threatened the victim with a gun.

*People v. Abrams*, No. 300511, 2012 WL 516057 at *2 (Mich. Ct. App. Feb. 16, 2012).  A jury convicted Abrams of second-degree murder, MCL § 750.317; felon in possession of a firearm, MCL § 750.224f, and possession of a firearm during the commission of a felony, MCL § 750.224b.  He was then sentenced to 52-to-102 years' imprisonment.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals.  The appellate brief filed by his appellate counsel raised the argument that now forms his first habeas claim; that Mr. Abrams was denied his state and federal constitutional

rights to a fair trial by an impartial jury under the Sixth Amendment and to due process under the Fourteenth Amendment and Article 1 sections 17 and 20 of the United States Constitution due to improper prosecutorial questioning and argument.  Petitioner also filed a supplemental *pro se* brief, raising the arguments that now form his second, third, and fourth habeas claims.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Abrams,* 2012 WL 516057 at *2*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he presented to the court of appeals. The Michigan Supreme Court denied the application, unpersuaded that the issues presented by Abrams warranted review. *People v. Abrams*, 817 N.W.2d 74 (Mich. 2012) (unpublished table decision).

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising the arguments that now form his fifth, sixth, seventh, and eighth habeas claims, as well as additional claims not presented in this action. The trial court denied Abram's motion for relief from judgment in an opinion dated June 12, 2013, finding that Abrams' ineffective assistance of counsel claim lacked merit, and that Petitioner had failed to demonstrate "good cause" or "actual prejudice" under Michigan Court Rule 6.508(D)(3) for failing to raise his additional claims during his direct appeal.

Petitioner next filed an application for leave to appeal in the Michigan Court of Appeals, which was denied based on Petitioner's failure to establish an entitlement to relief under Michigan Court Rule 6.508(D). *People v. Abrams*, No. 317335, Mich. Ct. App. Order (Oct. 19, 2013).  Petitioner then applied for leave to appeal the denial to the Michigan Supreme Court,

which was denied under Rule 6.508(D). *People v. Abrams*, 843 N.W.2d 759 (Mich. 2014) (unpublished table decision).

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is contrary to Supreme Court precedent under § 2254(d)(1) if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) " the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).  A state court adjudication involves an unreasonable application of federal law under § 2254(d)(1) if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or

erroneous," but rather "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotations and citations omitted):

> [E]ven clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). Rather, the pertinent question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702.  In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

### A.

Petitioner's first and fourth claims assert that he was denied a fair trial by the misconduct of the prosecutor. Specifically, Petitioner contends (1) the prosecutor incorrectly characterized the testimony of the cab driver during her opening statement, (2) the prosecutor improperly questioned Petitioner about his prior convictions, parole status, motivation for other witnesses to lie, and possession of a gun, and (3) the prosecutor improperly stated during closing arguments

that the victim was shot at point-blank range.  Because these claims were reasonably adjudicated by the Michigan Court of Appeals during Petitioner's direct appeal, habeas relief is limited under § 2254(d).

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Parker v. Matthews,* 132 S. Ct. 2148, 2153, (2012) (confirming that *Donnelly/Darden* is the proper standard).  "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted).  Indeed, because the *Darden* standard is a very general one, courts have "more leeway… in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155 (internal quotation marks omitted).

### i.

Petitioner first asserts that the prosecutor mischaracterized testimony during her opening statement. The Michigan Court of Appeals rejected Petitioner's claim that this questioning was improper as follows:

> [D]efendant argues that the prosecutor erroneously indicated during her opening statement that the evidence would show that defendant and the victim were arguing inside the taxi cab. Generally, prosecutors are "afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "[W]hen a prosecutor states that evidence will be submitted to the jury, and the evidence is not presented, reversal is not

- 6 -

warranted if the prosecutor did so acting in good faith." *People v Wolverton*, 227 Mich App 72, 75; 574 NW2d 703 (1997).

During her opening statement, the prosecutor claimed that the cab driver would testify that defendant and the victim were arguing. To the contrary, the cab driver testified that the two men did not argue. During defendant's preliminary examination, the cab driver initially testified that the two men were talking normally and that no one was yelling. The prosecutor then impeached the driver with his statement to the police, in which he indicated that the two men were drunk and arguing. Thereafter, the cab driver admitted that the statement that he gave to the police was true. Therefore, the prosecutor was not acting in bad faith when she stated that the cab driver would testify that defendant and the victim were arguing. In any event, the trial court instructed the jury that the attorneys' statements and arguments were not evidence, and "juries are presumed to follow their instructions." *People v Mette*, 243 Mich App 318, 330-331; 621 NW2d 713 (2000). Thus, defendant has failed to establish plain error affecting his substantial rights.

*People v. Abrams*, No. 300511, 2012 WL 516057 at *2. The Court of Appeals correctly noted that the prosecutor's statement was supported by the preliminary examination testimony of Mashalah and his admission that what he had told the police was true. In any event, a variance between a prosecutor's summary of the expected testimony during opening statements and the testimony that is actually presented is not necessarily reversible error, especially when a proper limiting instruction is given. *Frazier v. Cupp*, 394 U.S. 731, 736 (1969).

Here, the trial court instructed the jurors at the beginning and the end of trial that the lawyers' arguments and statements were not evidence. A jury is presumed to have followed a trial court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Furthermore, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice Petitioner in light of the trial court's limiting instruction to the jury. *United States v. Campbell*, 317 F.3d 597, 606-07 (6th Cir. 2003) (prosecutor's opening statement in narcotics prosecution, which referred to expected testimony of witness who subsequently did not testify at trial, did not prejudice defendants, where jury was instructed that statements of attorneys were

not evidence, and there was no indication that the jury was unable to follow the court's instructions).

## ii.

Petitioner next argues that the prosecutor improperly questioned him about his prior convictions, parole status, motivation for other witnesses to lie, and possession of a gun. With respect to Petitioner's prior convictions, the Michigan Court of Appeals noted that evidence of these prior offenses was barred by Michigan Rule of Evidence 609(c) because they were more than ten years old. The Michigan Court of Appeals similarly found that the prosecutor impermissibly referenced Petitioner's status as a parolee. The court nevertheless held that Petitioner was not entitled to relief on these claims because any error in this regard was harmless in light of the overwhelming evidence presented against him at trial. This Court agrees with both propositions.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court held that, for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id*. at 637. The Court indicated that application of the direct-review harmless error test by a federal court reviewing a state court conviction on habeas review would undermine a state's "interest in finality," would infringe upon a state's sovereignty over its own criminal matters, "would undercut the historic limitation of habeas relief to those who had been '"grievously wronged,"'" and would impose "'significant 'social costs.'" *Fry v. Pliler*, 551 U.S. 112, 117 (2007) (quoting *Brecht*, 507 U.S. at 637). Thus, *Brecht's* more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state court conviction regardless of

whether the state courts engaged in a harmless error analysis of the petitioner's claims. *Fry*, 551 U.S. at 121-22.

In the aftermath of *Fry*, the Sixth Circuit has concluded that the *Brecht* standard is always the test to apply to determine whether an error was harmless, and it is thus no longer necessary for a habeas court to ask whether the state court unreasonably applied the direct-review harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. *Ruelas v. Wolfenbarger*, 580 F. 3d 403, 412 (6th Cir. 2009). The Sixth Circuit observed that, in light of the Supreme Court's holding in *Fry*, "a federal habeas court is never required to determine whether a state court's harmless error determination was 'unreasonable'—*Brecht* handles the work on this, too." *Ruelas*, 580 F. 3d at 412.

Here, as correctly noted by the state appellate court, there was overwhelming evidence presented at trial indicating Petitioner's guilt. The eyewitness to the shooting, Felicia McCalvin, saw Petitioner with the victim below her townhouse moments before she heard the gunshots, and then saw Petitioner running from the scene. After Petitioner was arrested, Ms. McCalvin identified Petitioner in a photographic show-up, and his clothing matched Ms. McCalvin's description of the shooter. The victim's father testified that hours before the shooting, Petitioner threatened to kill him or the victim that night. The victim's girlfriend similarly testified that Petitioner threatened the victim with a gun. Furthermore, Petitioner testified that he was with the victim when he was shot, but the location that he alleged that the shooting occurred was different than the location that Ms. McCalvin placed the shooting. *See People v. Abrams*, No. 300511, 2012 WL 516057 at *2.

Furthermore, the improper references made by the prosecutor were mitigated by the fact Petitioner admitted during his testimony that he had been in jail many times, that he had given

the police a false name when he was arrested, and he stipulated that he had a prior felony conviction for purposes of the felon in possession of a firearm charge. *People v. Abrams*, No. 300511, 2012 WL 516057 at *3. For these reasons, the improper reference to Petitioner as being a parolee and having prior convictions did not have a substantial or injurious influence on the outcome of the trial.

### iii.

Petitioner Abrams also asserts that the prosecutor improperly asked him to comment on the credibility of the prosecutor's witnesses. The Michigan Court of Appeals found that the challenged questions were not improper as follows:

> Defendant next argues that the prosecutor improperly asked him to comment on the credibility of prosecution witnesses. "[I]t is improper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Loyer*, 169 Mich App 105, 117; 425 NW2d 714 (1988). The record shows that, in response to the prosecutor's legitimate questions attempting to ascertain the facts surrounding the shooting, defendant maintained that the other witnesses had lied. In response to the prosecutor's inquiry whether defendant tried to sell drugs out of Allen's apartment, defendant claimed that Allen had lied when he testified as such. Defendant denied trying to sell drugs out of Allen's apartment. Similarly, when asked whether defendant tried to get the victim and Rouse to find drug customers, defendant testified that Rouse's testimony as such was untruthful. Defendant also testified, in a rambling response to the prosecutor's inquiry whether he remembered the cab driver, that Michael Smith lied when Smith testified that defendant had used profanity when he spoke to the victim.
>
> Thus, rather than asking defendant if other witnesses lied or whether they had motives to lie, the prosecutor initially was attempting to ascertain whether defendant had a different version of events. "It is not improper for the prosecutor to attempt to ascertain which facts are in dispute." *Ackerman*, 257 Mich App at 449. Further, although the prosecutor followed up with questions regarding the motives that the witnesses would have to lie, such questions were proper. While a prosecutor may not attempt to shift the burden of proof, *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003), "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof[,]" *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). In addition, while it is generally improper to ask a defendant to comment on the credibility of other witnesses, a

- 10 -

"defendant open[s] the door . . . when he attempt[s] to undermine" other
witnesses' credibility. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d
120 (2010). Defendant maintained throughout his testimony that the other
witnesses were lying and that his testimony was truthful. Thus, the prosecutor's
questions regarding defendant's theory of defense were proper.

*People v. Abrams*, 2012 WL 516057 at *3.

The Court of Appeals' determination was reasonable. The prosecutor did not ask
Petitioner to comment on the witnesses' credibility. Rather, at points during cross-examination of
Petitioner, the prosecutor asked questions based on the testimony of other witnesses and then
asked Petitioner open-ended questions requesting his version of the same event. Rather than
simply testifying to a different version of the event, Petitioner characterized the other witness as
lying. For example, Milton Allen testified that Petitioner wanted to sell narcotics out of his
apartment but he refused, providing a motive for the crime. During cross-examination of
Petitioner, the prosecutor asked him if he indeed tried to sell narcotics out of Allen's apartment,
and rather than simply deny it, Petitioner testified, "he lied about that." Tr. 7/28/2010, p. 97.
Then, when Petitioner testified to a different account of events than other witnesses, the
prosecutor asked him why the other witness would say something different. *See Id.*, at 103-104.
106. Only after Petitioner repeatedly testified that the other witnesses were lying, did the
prosecutor directly ask Petitioner if it was his position that "everybody is lying on you." *Id.*, at
113. Accordingly, the factual basis for this claim – that the prosecutor injected this line of
allegedly improper questioning into the trial – is belied by the record. Petitioner has failed to
demonstrate that the prosecutor's follow-up questions after he testified that the witnesses were
lying violated any clearly established constitutional right.

**iv.**

- 11 -

Petitioner also contends that the prosecutor acted improperly in questioning him regarding whether he had a gun. The Michigan Court of Appeals found that the prosecutor properly asked Petitioner whether he was armed with a gun at the time of the shooting because the testimony was admissible under Michigan Rule of Evidence 611(c) and 401.  Quite simply, the evidence showed that the victim was shot to death, and an eyewitness saw Petitioner standing next to him immediately before the shooting. When Petitioner chose to testify, the question whether he was armed with a gun at the time was obviously highly relevant. Petitioner's claim of misconduct is based on the premise that the question was improper under state law. But because this premise was rejected by the state court as a matter of state law, this claim amounts to a noncognizable state law issue. *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Hammond v. Michigan Parole Bd.*, 2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006).

**v.**

Finally, Petitioner asserts that the prosecutor improperly stated during closing arguments that the victim was shot at point-blank range. The Michigan Court of Appeals noted that that the medical examiner testified that there was no evidence of "close-range" fire on the victim, and he clarified that he meant being shot at a range within two or three feet.  However, the Michigan Court of Appeals determined that the argument was not necessarily improper, as prosecutors are free to argue the evidence and all reasonable inferences arising from it. *People v. Abrams*, 2012 WL 516057 at *6 (citing *People v. Schumacher*, 276 Mich. App. 165, 178 (Mich. Ct. App. 2007)). The Court emphasized Ms. McCalvin's testimony that the shooting occurred when Petitioner and the victim were walking side-by-side. *People v. Abrams*, 2012 WL 516057 at *6. Given the vagueness of the term "point-blank" together with the suggestion that the victim could

have been shot at a range of just outside two to three feet, the state court reasonably found that the comment did not render Petitioner's trial fundamentally unfair.

**B.**

Petitioner's second and seventh claims assert that he was denied the effective assistance of counsel at trial. Petitioner argues that his counsel was ineffective for (1) failing to object to Ms. McCalvin's identification testimony at the preliminary examination, (2) failing to investigate clerical errors in the police reports and witness statements, and (3) failing to ensure that Petitioner was present at a competency hearing. ECF No. 1.  Relief with respect to these claims is similarly barred under §2254(d) because the state courts reasonably decided the claims against Petitioner.

To show he was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two prong test.  First, a petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, a petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, a petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, a petitioner must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* thus places the burden on a petitioner raising a claim of ineffective assistance of counsel, and not the state, to show a

reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Furthermore, on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. at 123 (internal quotations omitted). Consequently, the § 2254(d)(1) standard applies a "doubly deferential judicial review" to a *Strickland* claim brought by a habeas petitioner. *Id.* Because of this doubly deferential standard, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105. A reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

**i.**

Petitioner first asserts that his counsel failed to object to Ms. McCalvin's identification testimony at the preliminary examination that Petitioner was wearing gray jail clothing when the record showed that he was wearing green jail clothing. This claim is frivolous. The record simply reflects that Ms. McCalvin perceived Petitioner's jail clothing to be gray colored rather than green colored. There is no indication in the record that Ms. McCalvin was pointing to anyone other than Petitioner when she was asked at the preliminary examination to identify him. The state court reasonably rejected this claim. *See People v. Abrams*, 2012 WL 516057 at *5.

**ii.**

Petitioner next asserts that his counsel failed to investigate errors in the police reports and witness statements. Petitioner claims that Ms. McCalvin signed her name "Felecia McCal" on her police statement, and he further notes there are inconsistences in Ms. McCalvin's description of Petitioner's clothing at trial from what he was wearing when he was arrested. Specifically, Ms. McCalvin described Petitioner as wearing a blue or black cap, a navy coat and dark blue jeans, whereas the police report described all the items as being black. Petitioner asserts counsel should have used the discrepancy at trial. Petitioner also asserts that his trial counsel should have objected to the fact that the cab driver did not pick Petitioner out of a lineup, to a police report that was not time-stamped, and to the fact that the police report used two different addresses for the scene of the crime – 4262 Canfield and 4264 Canfield.

The Michigan Court of Appeals rejected these claims on the basis that Petitioner had failed to demonstrate how his counsel's failure to take action with respect to these items affected the outcome of his trial. *See People v. Abrams*, 2012 WL 516057 at *5-6. This determination was reasonable. A review of the trial record shows that Petitioner's counsel conducted a thorough and professional cross examination of Ms. McCalvin. He challenged her identification of Petitioner, and he challenged her recollection to suggest that she did not know whether the man walking with the victim was the shooter. In any event, these alleged failings of defense counsel were largely rendered moot by Petitioner's own testimony. Petitioner admitted that he took the cab ride with the victim and he admitted he was walking with him in the general area at the time of the shooting. Petitioner's defense was that the victim was shot in a drive-by shooting while he was with him – not that the victim was shot by some other man who was walking with him. Accordingly, challenging the cab driver or Ms. McCalvin's identification of Petitioner as the man walking with the victim in a more aggressive manner would not have provided much of

- 15 -

a benefit given Petitioner's admissions. The Court finds that these allegations of ineffective assistance of counsel were reasonably rejected by the Michigan Court of Appeals.

### iii.

In his third allegation of ineffective assistance of counsel – his seventh habeas claim – Petitioner Abrams asserts that his counsel failed to ensure that Petitioner was present during a competency hearing. ECF No. 1. This claim was presented to the state courts in Petitioner's motion for relief from judgment, and the trial court denied relief with respect to this claim for lack of merit. The trial court found that the relevant court rule, Michigan Court Rule 6.125, does not require that a defendant be present at such a hearing, and that Petitioner had therefore not demonstrated ineffective assistance of counsel.  Moreover, as noted by Respondent, the record of the hearing in question indicates that Petitioner was present. *See* ECF No. 8 Ex. 8, p. 8. During the hearing, defense counsel addressed Petitioner directly and asked him to listen. *Id*. Accordingly, this allegation of ineffective assistance of counsel is belied by the record as well and will be denied.

### C.

Petitioner's third habeas claim asserts that the trial court erred in permitting a videotape of his police interrogation to be played before the jury on the morning of one of his trial days before he arrived in the courtroom. ECF No. 1. The Michigan Court of Appeals reviewed the trial record and made a factual determination that the recording was not played in Petitioner's absence. *See People v. Abrams*, 2012 WL 516057 at *5-6.  The court found that the tape was played at the end the trial day on July 27, 2010 and, contrary to Petitioner's assertion, was not resumed on the morning of July 28, 2010 before Petitioner arrived at court. *Id*.  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct, and a

petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999). Petitioner has not overcome the presumption of correctness. He offers no reason, let alone clear and convincing evidence, to establish that the tape was played before the jury on the morning of July 28, 2010, before he arrived at court. The claim is therefore without merit.

## D.

Petitioner's fifth, sixth, and eight claims were not presented to the state court during his post-conviction review proceeding. ECF No. 1. Respondent contends that these claims are procedurally defaulted because Petitioner failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by Michigan Court Rule 6.508(D)(3).

## i.

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). In addition, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a

trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders do not "clearly and expressly" state that the judgment rests on a procedural bar. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claim. *Id*.

In the present case, the Wayne Circuit Court judge, in rejecting Petitioner's motion for relief from judgment, ruled that Petitioner had failed to satisfy the good cause or actual prejudice requirements of Rule 6.508(D)(3). *See* ECF No. 8, Ex. 18, p. 3.  Because the trial court judge

- 18 -

denied the petitioner post-conviction relief based on the procedural grounds stated in Mich.Ct.R. 6.508(D)(3), Petitioner's fifth, sixth, and eight claims are procedurally defaulted pursuant to Mich.Ct.R. 6.508(D)(3). See *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); see also *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

### ii.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006). The miscarriage-of-justice exception may only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *Id*. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

### a.

Petitioner has shown no cause for his failure to comply with the Michigan state procedural rule. The only arguable basis for cause would be appellate counsel's failure to raise these claims on direct appeal. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (noting that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause).   In order to constitute cause for a procedural default, however, counsel's performance must amount to ineffective assistance of

counsel under the Sixth Amendment, or must in itself amount to an independent constitutional claim. *Id*. Thus, the ineffective assistance claim asserted as cause for a procedural default must be both exhausted and not procedurally defaulted. *Id*. at 451-53. Because Petitioner Abrams has not exhausted any claim of ineffective assistance of appellate counsel, he cannot demonstrate cause to excuse his default.

**b.**

Finally, Petitioner has not presented any new, reliable evidence to support an assertion that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536. Because Petitioner has not presented any new reliable evidence that he is innocent of the crimes for which he was convicted, a miscarriage of justice will not occur if the Court declines to review the merits of Petitioner's procedurally defaulted claims. See *Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Petitioner's habeas claims will therefore be denied.

**III.**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In

applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV.

Accordingly, it is **ORDERED**, that Petitioner Abrams' petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED**, that a certificate of appealability is **DENIED**.

It is further **ORDERED**, that permission to proceed on appeal in forma pauperis is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 4, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 4, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---